# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
November 10, 2010 Session

## STATE OF TENNESSEE v. TIMOTHY WASHINGTON LYONS AND ANTONIO LAMONT SCALES

### Appeal from the Criminal Court for Davidson County
### No. 2007-C-1951    Monte Watkins, Judge

### No. M2009-02524-CCA-R3-CD - Filed January 18, 2011

A Davidson County Criminal Court jury convicted the defendants, Timothy Washington Lyons and Antonio Lamont Scales, of the attempted second degree murder of Teresa Crenshaw and the reckless aggravated assault of Quanita Robinson. The trial court sentenced each defendant to 22 years' incarceration. In this appeal, both defendants challenge the sufficiency of the convicting evidence, the trial court's failure to provide the "missing witness" instruction, and the propriety of the sentences imposed. Discerning no reversible error, we affirm the convictions. Because the trial court mistakenly believed it was imposing sentences for Class C felony aggravated assault rather than Class D felony aggravated assault, utilized improper enhancement factors, and imposed consecutive sentences without making required findings of fact, the sentences imposed are vacated, and the case is remanded for resentencing. In addition, new judgment forms for the aggravated assault convictions must be entered to reflect that the defendants were convicted of Class D felony aggravated assault.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Vacated and Remanded in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Timothy Washington Lyons.

Colin B. Calhoun, Nashville, Tennessee, for the appellant, Antonio Lamont Scales.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Hugh Ammerman, Assistant

District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The convictions in this case relate to the shootings of Teresa Crenshaw and Quanita Robinson on March 31, 2007. At the joint trial, Ms. Crenshaw testified that on that date she was driving along Coffee Street near Eleventh Avenue in Nashville when she saw the defendants sitting in a gray, two-door car parked in an alley. She recalled that Mr. Scales was in the driver's seat, Mr. Lyons was in the passenger's seat, and two individuals were in the backseat. Ms. Crenshaw stated that she spoke briefly to the defendants and then drove a very short distance to offer a ride to Ms. Robinson, who was walking. Just after Ms. Robinson got into the vehicle, Ms. Crenshaw turned back to see guns being pointed at her by the occupants of the gray car. Ms. Crenshaw testified that both defendants had guns pointed at her.

When the men started to fire, Ms. Crenshaw "scrunched down in the vehicle and accelerated." She stated that the men pursued her and continued to fire at her as she attempted to get away. A short distance later, Ms. Crenshaw made a left turn and the gray car made a right turn. She then continued to drive until she saw her aunt driving by. She flagged down the aunt and asked for transportation to the hospital. Ms. Crenshaw stated that a bullet struck her right upper arm and that another bullet grazed Ms. Robinson's left upper arm.

On the way to the hospital, Ms. Crenshaw telephoned Mr. Scales and asked him why he had shot at her. According to Ms. Crenshaw, Mr. Scales told her that "they was going to kill [her], [her] boyfriend, and everything he loved."

Once at the hospital, Ms. Crenshaw learned that she had also suffered a gunshot wound to her back. She stated that doctors were forced to leave a bullet fragment in her arm and to leave the entire bullet in her back near her lung.

Crime scene investigators with the Metropolitan Nashville Police Department discovered 13 cartridge casings "scattered along . . . a hundred" yard path from Ms. Crenshaw's abandoned vehicle backwards toward Eleventh Avenue. They found no blood inside the vehicle.

At the conclusion of this proof, the State rested, and neither defendant presented any evidence. Based upon the evidence presented by the State, the jury convicted the defendants, who had originally been charged with attempted first degree murder, of the lesser included offense of attempted second degree murder in count one and reckless assault

-2-

as charged in count two.[1]

Following the denial of their timely but unsuccessful motions for new trial, both defendants appealed to this court, claiming that the evidence adduced at trial was insufficient to support their convictions, that the trial court erred by refusing to provide the "missing witness" instruction, and that the sentences imposed are excessive.

*I. Sufficiency*

Both defendants challenge the sufficiency of the convicting evidence. Mr. Lyons contends that the State failed to establish that he acted knowingly with regard to the attempt on Ms. Crenshaw's life and that Ms. Crenshaw's testimony regarding both offenses was unreliable. Mr. Scales asserts that the State failed to establish the elements of either offense "due to the shockingly inconceivable testimony of Ms. Crenshaw."

We review the sufficiency challenge mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Examining the proof adduced at trial in the light most favorable to the State, as we are required to do, we find the evidence sufficient to support the convictions of attempted second degree murder of Ms. Crenshaw. "Second degree murder is . . . [a] knowing killing of another." T.C.A. § 39-13-210(a)(1) (2006). Code section 39-12-101

---

[1]The defendants were additionally charged with the reckless aggravated assault of Antwan Bowers, the felony reckless endangerment of Michael Massey, and the felony reckless endangerment of Linda Sylvain. Those charges were dismissed by the State.

defines criminal attempt:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

*Id.* § 39-12-101(a).

Here, Ms. Crenshaw, the victim of the attempted second degree murder, testified that both defendants began firing guns at her and Ms. Robinson just after Ms. Robinson entered Ms. Crenshaw's vehicle. She stated that the defendants continued to fire at her as she tried to get away and that Mr. Scales stated an intent to kill her. Despite the defendants' characterizing Ms. Crenshaw's testimony as "vacillating," "unbelievable," "outrageously inconceivable," and essentially incredible, the jury, as the trier of fact, accredited her testimony. This court may not go behind that credibility determination.

The evidence was also sufficient to support the defendants' convictions of the reckless aggravated assault of Ms. Robinson. As charged in this case, "[a] person commits aggravated assault who . . . [r]ecklessly commits an assault as defined in § 39-13-101(a)(1), and . . . [u]ses or displays a deadly weapon." *Id.* § 39-13-102(a)(2)(B). Code section 39-13-101(a)(1) provides: "A person commits assault who . . .[i]ntentionally, knowingly or recklessly causes bodily injury to another." *Id.* § 39-13-101(a)(1). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." *Id.* § 39-11-106(2). Ms. Crenshaw testified that Ms. Robinson was wounded during the encounter, suffering a grazing bullet wound to her shoulder that resembled a burn, and that she screamed in pain. This testimony sufficiently establishes the offense of reckless aggravated assault.

In a related issue, both defendants also allege that despite being charged with reckless aggravated assault, they were actually convicted of the greater offense of intentional or knowing aggravated assault. The State asserts that the defendants were charged with and convicted of aggravated assault by recklessness but that the trial court and the parties failed to recognize that the aggravated assault by recklessness is graded one conviction class lower than an intentional or knowing assault and that, as a result, the trial court erroneously imposed a sentence within the wrong conviction class. We agree with the State.

The indictment in this case charged that the defendants "recklessly did cause bodily injury to Quanita Robinson by the use or display of a deadly weapon, to wit: a handgun, in violation of Tennessee Code Annotated § 39-13-102." Similarly, the trial court instructed the jury that it must find "(1) that the defendants recklessly caused bodily injury to another; [and] (2) that the defendants used or displayed a deadly weapon, to wit: a handgun." This language tracks that of Code section 39-13-102(a)(2)(B), aggravated assault by recklessness. As a result, the only assault offense of which the defendants could have been convicted is reckless aggravated assault, which is a Class D felony. The judgment forms, however, indicate that the defendants were convicted of Class C felony aggravated assault.

There is no question that Class C felony convictions were entered in error. The record is clear that neither the trial court nor the parties realized during sentencing that reckless aggravated assault is a Class D felony rather than a Class C felony. The trial court imposed sentences of eight years for the convictions of aggravated assault, which are valid Range II sentences for a Class D felony conviction. Given that the trial court believed it was imposing a sentence for a Class C felony conviction, however, it is our view that the case should be remanded to the trial court for reconsideration of the sentences for aggravated assault.

*II. Missing Witness Instruction*

Both defendants claim that the trial court erred by refusing to provide a missing witness instruction to the jury based upon the State's failure to call Ms. Robinson as a witness.

Initially, although Mr. Lyons lists as an issue the trial court's failure to provide the missing witness instruction, he omitted the issue from the argument portion of his brief. The issue is not supported by argument, citation to the relevant portions of the record, or citation to applicable authorities. As such, Mr. Lyons has waived our consideration of this issue. *See* Tenn. Ct. Crim. App. R. 10(b).

The "missing witness" or "absent material witness" instruction provides:

> When it is within the power of the [S]tate or the defendant to produce a witness who possesses peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is available fails to call such witness, an inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness. Whether there was such a witness and whether such an inference has arisen is for you to decide and if so, you are to determine what weight it shall be given.

1-42 T.P.I. Criminal 42.16. Before the instruction may be given, the party requesting it must establish "that 'the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial.'" *State v. Bigbee*, 885 S.W.2d 797, 804 (Tenn. 1994) (quoting *State v. Middlebrooks*, 840 S.W.2d 317, 334-35 (1992)) (internal citation and quotation marks omitted). To justify a missing witness instruction, "the witness who was not called must not have been equally available to both parties." *See State v. Boyd*, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992) (citing *State v. Overton*, 644 S.W.2d 416, 417-18 (Tenn. Crim. App. 1982); *Bolin v. State*, 472 S.W.2d 232, 235 (Tenn. Crim. App. 1971)); *State v. Eldridge*, 749 S.W.2d 756, 758 (Tenn. Crim. App. 1988).

At trial, the prosecutor indicated that the State had issued a subpoena for Ms. Robinson, that a State investigator had tracked her down, and that Ms. Robinson had assured the investigator that she would attend the trial. Despite the State's efforts, Ms. Robinson did not show up for trial. The record establishes that Ms. Robinson, as an eyewitness victim, had knowledge of material facts in the case and that she was available to the process of the court. Other than stating that the victim of a crime would necessarily favor the State as a party, however, Mr. Scales neither asserted that Ms. Robinson had a relationship with the State that would have predisposed her to favor the State nor established that Ms. Robinson was not equally available to both parties. Under these circumstances, the trial court did not err by refusing to provide the missing witness instruction.

*III. Sentencing*

Both defendants contend that the sentences are excessive, arguing that the trial court improperly enhanced the individual sentences and erred by imposing consecutive sentences. The State correctly points out that the sentences for the defendants' convictions of aggravated assault should be vacated and remanded for resentencing in light of the fact that the trial court erroneously believed that the defendants had been convicted of Class C felony aggravated assault rather than Class D felony aggravated assault. In addition, the State concedes that a remand for resentencing is appropriate because the trial court imposed consecutive sentencing without making the required findings under *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). We agree with the State.

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

> In making its sentencing decision, the trial court must consider:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

> (7) Any statement the defendant wishes to make in the
> defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

The parties presented no live testimony at the sentencing hearing, choosing instead to rely upon the presentence reports and argument. The presentence reports as well as certified copies of the judgments established that on August 2, 2001, both defendants pleaded guilty in case number 2001-A-406 to two counts of aggravated robbery in exchange for a total effective sentence of nine years' incarceration. Mr. Lyons' presentence report established that the 28-year-old Mr. Lyons, a suspected member of the "Crips" gang, garnered convictions of possession of drug paraphernalia and simple possession of marijuana following his release on parole. Mr. Lyons was on parole at the time of the offenses in this case. In addition to these convictions, Mr. Lyons had numerous juvenile adjudications dating back to age 14. Twenty-five-year-old Mr. Scales, a confirmed member of the "Gangster Disciples" gang, was released on parole from the nine-year sentence only one month before the offenses in this case.

The defendants' aggravated robbery convictions qualified them for Range II sentencing. The trial court concluded that both defendants had histories of criminal convictions in addition to those necessary to establish the range, that the offenses involved more than one victim, that the defendants employed firearms, that the defendants had no hesitation about committing a crime where the risk to human life was high, and that the defendants had juvenile adjudications that would have been felonies if committed by an adult. *See* T.C.A. § 40-35-114(1), (3), (9), (10), (16). Based upon these enhancement factors, the trial court imposed sentences of 14 years for both defendants' convictions of attempted second degree murder and sentences of eight years for both defendants' convictions of aggravated assault.

The court also concluded, for purposes of imposing consecutive sentences, that the defendants were "dangerous offenders whose behavior indicates little or no regard for human life and they had no hesitation of committing a crime." The trial court ordered both defendants to serve their sentences consecutively, for total effective sentences of 22 years for both defendants.

As indicated above, when imposing the eight-year sentences for aggravated assault, the trial court was under the mistaken impression that the defendants had been convicted of a Class C felony. The defendants were actually convicted of Class D felony

aggravated assault and are entitled to be sentenced for that offense. In consequence, the case must be remanded for reconsideration of the sentences imposed for aggravated assault.

With regard the application of the enhancement factors in this case, the record establishes that the trial court erroneously applied factor (3), that the offenses involved more than one victim, to both convictions. *See State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) (holding that factor (3) may not be applied where a defendant is convicted of separate offenses committed against each victim); *see also State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995) ("This Court has held that this factor may not be applied to enhance a sentence when the appellant is separately convicted of the offenses committed against each victim."). In addition, the trial court erroneously applied enhancement factor (9), that the defendants used or displayed a firearm, to the defendants' convictions of aggravated assault because the use of a firearm is an element of aggravated assault as charged in this case. *See* T.C.A. § 40-35-114 ("If appropriate for the offense and *if not already an essential element of the offense*, the court shall consider, but is not bound by, the following advisory factors in determining whether to enhance a defendant's sentence[.]") (emphasis added). The trial court also erroneously applied enhancement factor (10), that the defendants had no hesitation about committing a crime when the risk to human life was high, to the defendants' convictions of attempted second degree murder because that offense necessarily includes a high risk to human life and because the State failed to establish the presence of anyone but the two named victims. *See, e.g.*, *State v. Tony E. Cannon, Jr.*, No. M2007-00557-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Nashville, June 19, 2008). Finally, the trial court erred by applying enhancement factors (1) and (16) to Mr. Scales's convictions. The record established that Mr. Scales's only previous convictions were the two convictions of aggravated robbery used to move him from Range I into Range II. Moreover, although the trial court stated that both defendants had a record of juvenile adjudications that would have been felonies if committed by an adult, no record of Mr. Scales's juvenile adjudications was placed into the record.

With regard to the imposition of consecutive sentences, the State concedes and the record establishes that the trial court imposed consecutive sentencing based upon its finding that both defendants were dangerous offenders without making the requisite findings under *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). Code section 40-35-115(b)(4) provides that the trial court may order sentences to be served consecutively if the court finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). *Wilkerson* limits the application of this section, however, and holds that the trial court may order consecutive sentences for the dangerous offender only after also finding by a preponderance of the evidence "that an extended sentence is necessary to protect the public against further criminal

conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). The trial court in this case made no such findings. Moreover, although consecutive sentencing may be based upon any of the factors enumerated in Code section 40-35-115(b), the record does not cogently establish that any of the remaining factors are applicable. *See* T.C.A. § 40-35-115(b)(1)-(3), (5)-(7). Under these circumstances, the imposition of consecutive sentences in this case was in error.

*Conclusion*

The evidence adduced at trial was sufficient to support both defendants' convictions of second degree murder and aggravated assault. Accordingly, the convictions are affirmed. Because numerous errors attend the sentences imposed in this case, the case must be remanded to the trial court for resentencing for all convictions. New conviction judgments for the convictions of aggravated assault must be entered reflecting the correct conviction class and a sentence within that conviction class. Before it may impose consecutive sentences upon remand, the trial court must complete the fact finding required by *Wilkerson*.

_____
JAMES CURWOOD WITT, JR., JUDGE